IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAWN MICHELLE MCLEAN,

        Plaintiff,

v.                                                                                                 CIV 15-0341 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum (*Doc. 16*), filed August 28, 2015. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *Doc. 7*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court finds that Plaintiff's motion is well-taken and will be granted.

**I.**   **Procedural History**

On April 30, 2012, Plaintiff filed applications with the Social Security Administration for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act, with an alleged onset of disability beginning June 22, 2011, from back pain, migraines, and chronic sinusitis. *AR*

at 173-83, 219.[1] The agency denied Plaintiff's claims initially and upon reconsideration, and Plaintiff requested a hearing. *AR* at 61-78, 80-93, 96-109.

After a *de novo* hearing, Administrative Law Judge Myriam C. Fernandez Rice ("the ALJ") issued an unfavorable decision on February 27, 2014. *AR* at 21-30. Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council declined on March 3, 2015. *AR* at 1-6, 15.  As such, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential five-step evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

Here, at Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 23. At Step Two, she determined that Plaintiff had the severe impairments of lumbar degenerative disc disease, lumbar facet atrophy, myofascial pain of the lumbar spine, sleep apnea, migraines, and obesity. *AR* at 23. At Step Three, she concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 24. At Step Four, she assessed Plaintiff's residual

---

[1] Documents 13-1 through 13-25 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

functional capacity ("RFC"), finding an RFC that allowed Plaintiff to perform sedentary work, "except [she] must never climb ladders, ropes or scaffolds; she can occasionally climb ramps or stairs; stoop, crouch, kneel and crawl; work is limited to simple routine and repetitive tasks; can maintain concentration, persistence and pace for two hours at a time, also included the ability to work for additional periods of two hours at a time, before and after regularly scheduled breaks in the morning, lunch and in the afternoon; the claimant is limited to only occasional interaction with the public and coworkers." *AR* at 24. Given this RFC, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. *AR* at 29. Nevertheless, at Step Five, she determined that considering all of her impairments, there were jobs existing in significant numbers in the national economy that Plaintiff could perform and that she was, therefore, not disabled. *AR* at 29.

## II.     Legal Standard

The general inquiry is whether the ALJ applied the correct legal standards and whether her decision is supported by substantial evidence. *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012). A deficiency in either area is grounds for remand. *Id.* Substantial evidence is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence, substituting its own discretion for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

**III.   Analysis**

Plaintiff contends that the ALJ erred in three regards: by failing to properly evaluate the opinion evidence, *Doc. 16* at 9; failing to properly evaluate her obesity, *id.* at 11-12; and failing to properly consider her migraines, *id.* at 13.

   **A.  Whether the ALJ properly evaluated the opinion evidence.**

Plaintiff contends that the ALJ improperly evaluated the medical opinions of Jill Blacharsh M.D. and Paula Hughson, M.D. The Court addresses each of these opinions, and the ALJ's treatment of them, in turn.

   **i.   Dr. Blacharsh's Opinions**

Dr. Blacharsh, a non-examining state agency consultant, reviewed Plaintiff's records and completed both a Psychiatric Review Technique ("PRT") assessment as well as a Mental Residual Functional Capacity ("MRFC") assessment on November 15, 2012.  It is the ALJ's treatment of Dr. Blacharsh's MRFC Assessment with which Plaintiff takes issue.

The MRFC assessment is divided into two sections. First, the author is instructed to answer a series of questions to "help determine the individual's ability to perform sustained work activities." *AR* at 105. Under this first section ("Section One"), if the individual is limited in a certain area, the author rates the level of limitation. *See AR* at 105-06. In the narrative portion ("Section Three"), the author is instructed to provide a narrative explanation of the limitations indicated. *See, e.g., AR* at 106. The form itself explains that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes." *AR* at 105.

In Plaintiff's case, Dr. Blacharsh found Section One that she was "moderately limited" in the following abilities:

- to understand, remember, and carry out detailed instructions;

- to maintain attention and concentration for extended periods;

- to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- to sustain an ordinary routine without special supervision;

- to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- to accept instructions and respond appropriately to criticism from supervisors;

- to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

- to set realistic goals or make plans independently of others

*AR* at 105-06. Then, in Section Three, Dr. Blacharsh set forth the following MRFC: "Evidence suggests [Plaintiff] can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *AR* at 106.

The ALJ accorded Dr. Blacharsh's opinions "great weight." *See AR* at 27. Indeed, her own RFC closely resembles that of Dr. Blacharsh, except that the ALJ limited Plaintiff to "only occasional interaction with the public and coworkers," whereas Dr. Blacharsh omitted any such limitation from her MRFC. *Compare AR* at 24 with *AR* at 27.

Plaintiff contends that although the ALJ gave great weight to Dr. Blacharsh's opinion and adopted her conclusion in the RFC finding, she did not adequately discuss the moderate limitations that she assessed in the performance of "activities within a schedule, maintaining regular attendance, being punctual, sustaining an ordinary routine without special supervision, and completing work without interruptions and performing at a consistent pace without excess rest periods." *Doc. 16* at 10. Plaintiff maintains that because the ALJ's RFC finding conflicts with a portion of Dr. Blacharsh's assessment, she was required to explain why she rejected the moderate functional limitations found by Dr. Blacharsh. *Id.*

The Commissioner maintains that Plaintiff is placing undue emphasis on Section One of the MRFC form[2] completed by Dr. Blacharsh. According to the Commission, "Section I does not represent the State agency reviewing psychologists' mental RFC assessment." *Doc. 20* at 7 (citing Program Operations Manual System ("POMS"), POMS DI 24510.060(b)(2)(a) (2011), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060). The Commissioner references guidance provided by the POMS indicating that ALJs should, instead, rely upon the narrative written by psychiatrists in Section Three of the MFRFC as their assessment of RFC. *Doc. 20* at 7 (referencing POMS DI 25020.010(B)(1)).

---

[2] Plaintiff, in reply, maintains that there is no Mental Residual Functional Capacity form in this case and that, instead, Dr. Blacharsh merely completed a portion of a Disability Determination Explanation for the reconsideration determination. *AR* at 21. Although the information submitted by Dr. Blacharsh *does* constitute one part of the Disability Determination Explanation, it is entitled "Mental Residual Functional Capacity Assessment," *see AR* at 102-04, and appears to be in the same or equivalent format as the assessment contemplated in *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) and other pertinent case law. The Court is unaware of any consequential distinction between the Mental Residual Functional Capacity Assessment at issue here and some other "form" contemplated by Plaintiff, and she does not further develop this argument.

Following the submission of the parties' briefs in this case, the Tenth Circuit Court of Appeals addressed a challenge similar to the one asserted by Plaintiff here. In *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), a consultative psychologist completed an MRFC assessment form and opined that the plaintiff was "moderately limited" in a number of abilities, including most of those identified as moderately limited Dr. Blacharsh here. Then, in the narrative portion of the assessment, the psychologist opined that the plaintiff could engage in work that was limited in complexity and could manage social interactions that were not frequent or prolonged. The RFC determined by the ALJ in *Smith* was similar to the one authored by the psychologist in the MRFC assessment narrative.

On appeal, the plaintiff in *Smith* questioned whether the ALJ's RFC had incorporated all of the moderate limitations that the psychologist listed in Section One of the MRFC Assessment. But, in response, the court explained: "This is the wrong question." *Id.* at 1269 n.2. According to the court, the psychologist's notations of moderate limitations "served only as an aid to her assessment of the [RFC]." *Id.* The court compared the ALJ's RFC findings to the psychologist's MRFC narrative, "not her notations of moderate limitations." *Id.* The court also reasoned that although the ALJ had not recited the moderate limitations assessed by the psychologist in the MRFC Assessment, he "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities." *Id.* at 1269.

*Smith* is controlling here. Just as the psychologist did in *Smith*, Dr. Blacharsh translated her specific findings regarding "moderate limitations" into her MRFC, which limited Plaintiff to simple instructions and decisions and to maintaining attention and

concentration for only two hours at a time. *AR* at 106. The ALJ accorded Dr. Blacharsh's opinion "great weight" and adopted most of her MRFC in her own RFC, providing a few additional restrictions. More particularly, the ALJ limited Plaintiff to simple, routine, and repetitive tasks and adopted Dr. Blacharsh's restriction regarding maintaining attention and concentration for only two hours at a time. *AR* at 24. While the ALJ did not parrot each of the moderate limitations described by Dr. Blacharsh in Section One of her MRFC Assessment, in the Court's assessment, her RFC limitations do adequately incorporate these moderate limitations, including those in the performance of activities within a schedule, maintaining regular attendance, being punctual, sustaining an ordinary routine without special supervision, completing work without interruptions, and performing at a consistent pace without excess rest periods. *See Smith*, 821 F.3d at 1269; *Chavez v. Colvin*, No. 15cv2201, 2016 WL 3212479, at *1 (10th Cir. June 2, 2016) (unpublished) (explaining that while the ALJ did not recite the moderate limitations found by the author in Section One of the MRFC assessment, she did adequately incorporate these limitations through her restriction in the RFC to "simple tasks".); *Nelson v. Colvin*, No. 15cv6226, 2016 WL 3865856 (10th Cir. July 12, 2016) (unpublished) (concluding that by limiting the plaintiff to "unskilled work, the ALJ effectively accounted for *all* the limitations noted in Section I" of the MRFC assessment, including the ability to remember and carry out detailed instructions, to maintain attention and concentration for extended periods, and to interact appropriately with the public). Based upon the guidance provided by the Tenth Circuit in *Smith* and its progeny, and considering the RFC in light of Dr. Blacharsh's MRFC assessment, the

Court rejects Plaintiff's argument that the ALJ's RFC failed to properly account for the moderate limitations identified by Dr. Blacharsh.

### ii.  Dr. Hughson's Opinions

At the request of the Commissioner, consulting psychiatrist Dr. Hughson examined Plaintiff for one hour, diagnosing her on Axis I with Somatoform Disorder NOS, Major Depressive Disorder Recurrent, and Possible Breathing Related Sleep Disorder. *AR* at 519. On Axis II, she diagnosed Plaintiff with Dependent Personality Traits, and on Axis V, she assessed her GAF at 48-50, indicating serious to major symptoms and impairment. *AR* at 519. Dr. Hughson opined that Plaintiff was "significantly depressed" and that she was "probably . . . unemployable" due to a combination of intractable migraines and chronic back pain. *AR* at 519. According to Dr. Hughson, Plaintiff would have marked limitations in her ability to carry out instructions and to interact with the public. *AR* at 521. Additionally, she found that Plaintiff would have moderate limitations in the following activities: understanding and remembering detailed or complex instructions, attending and concentrating, working without supervision, and interacting with coworkers and supervisors. *AR* at 521. The ALJ, however, gave Dr. Hughson's opinion "little weight," reasoning that it was without substantial support from the other evidence of record. *AR* at 27.

Plaintiff suggests that it was improper for the ALJ to give greater weight to the opinions of the non-examining state agency doctors than she did to the opinion of Dr. Hughson, who personally examined Plaintiff, albeit for only an hour. *Doc. 16* at 11. Plaintiff also notes that consultative evaluations, such as the one performed by Dr. Hughson, are typically performed because of the insufficiency of the record and based

upon only one examination. *Id.* The Commissioner maintains that the ALJ's evaluation of Dr. Hughson's opinion, and her conclusion that Dr. Hughson's limitations were not supported by the record, was proper.

The ALJ stated that she gave Dr. Hughson's opinion "little weight," because it was "without substantial support from other evidence of record." *AR* at 27. She explained that she considered the opinion to be an overestimate of Plaintiff's restrictions and limitations based on a mere "snapshot" of Plaintiff's functioning. *AR* at 27. The ALJ went on to explain that Plaintiff "engaged in a somewhat normal level of daily activity and interaction," caring not only for her young son, but also for her younger school-aged siblings. *AR* at 27. Additionally, the ALJ noted Plaintiff's reports of caring for herself, cooking simple meals, doing laundry, vacuuming, handling her finances, attending church, taking her son to the park, and going to the gym. *AR* at 27. In the ALJ's assessment, some of Plaintiff's activities required the same abilities as obtaining and maintaining employment. *AR* at 27-28. The ALJ explained that, in Plaintiff's case, the lack of surgical intervention suggested that her limitations were not as severe as Plaintiff let on. *AR* at 27. By extension, the lack of surgical intervention may also suggest that the limitations found by Dr. Hughson's were overstated.

Further, where Dr. Hughson found Plaintiff to be "significantly depressed," *AR* at 519, the ALJ noted that Plaintiff had not been treated for depression, *AR* at 26. In fact, the record suggests that Plaintiff was "asymptomatic" for major depression and generalized anxiety disorder during the relevant period. *AR* at 691, 695. It is also telling that Plaintiff did not allege disability on the basis of mental impairment. *See AR* at 41, 219. Further, at the September 2013 *de novo* hearing, which took place less than a year

after Dr. Hughson's examination, the ALJ asked Plaintiff whether she suffered from depression; Plaintiff responded that she had struggled with depression "in the past." *AR* at 45. For instance, her medical records show that she reported being "very depressed" when she was 13 to 15 years old. *AR* at 694. Plaintiff testified, however, that she no longer suffered from depression. *AR* at 45.

Notwithstanding 20 C.F.R. § 404.1527(c)(1), which provides that more weight is generally given to a source who examined the claimant, the fact that Dr. Hughson is characterized as an examining physician does not dictate that her opinion should necessarily receive greater weight than the state agency consultants' opinions. As the ALJ explained, the state agency consultants reviewed all of Plaintiff's medical evidence. Dr. Hughson's evaluation, in contrast, was based on only a "snapshot" of Plaintiff's functioning during a one-hour examination. Thus, the state agency consultants were privy to a more complete picture of Plaintiff's medical conditions and history. Under these circumstances, the Court cannot say that it was improper for the ALJ to give greater weight to the state agency consultants' opinions than she did Dr. Hughson's opinion.

In sum, having considered both the record evidence as well as Dr. Hughson's opinion of extreme mental impairment and disabling back pain and migraines, the Court finds the ALJ's assessment of Dr. Hughson's opinion to be reasonable and proper. *See Newbold v. Colvin*, 718 F.3d 1257 (10th 2013) (determining that the ALJ's reasons for giving diminished weight to a medical opinion were sufficiently clear where the ALJ noted that the limitations were inconsistent with the objective medical evidence and the

claimant's activities of daily living). The Court is satisfied that the ALJ applied the correct legal standards and properly evaluated Dr. Hughson's opinion.

### B. Whether the ALJ properly evaluated Plaintiff's obesity.

Next, Plaintiff contends that the ALJ did not adequately explain how her obesity affected her performance of sustained work activities contrary to Social Security Ruling 02-1p and *DeWitt v. Astrue*, 381 F. App'x 782 (2010) (unpublished). The Commissioner insists that the ALJ *did* properly consider the combined effects of obesity with her other impairments.

SSR 02-1p requires that an assessment be made at Step Four "of the effect obesity has upon the [claimant]'s ability to perform routine movement and necessary physical activity within the work environment. . . . As with any other impairment, [the ALJ must] explain how [she] reached [her] conclusions on whether obesity caused any physical or mental limitations." SSR 02-1p, 2002 WL 34686281, at *6-7. An ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments"; instead, she must "evaluate each case based on the information in the case record." *Id.* at *6.

Plaintiff relies upon *DeWitt v. Astrue*, 381 F. App'x 782 (10th Cir. 2010) for the proposition that the ALJ must indicate how or whether the claimant's obesity influenced her in determining the RFC. In *DeWitt*, the ALJ found obesity to be a severe impairment at Step Two. *DeWitt*, 381 F. App'x at *3. Although the ALJ, like the ALJ here, ultimately limited claimant to sedentary work with additional restrictions, the Tenth Circuit reasoned:

> there [was] nothing in the [ALJ's] decision indicating how or whether [the claimant's] obesity influenced the ALJ in setting those restrictions.

> Rather, it appear[ed] that the ALJ's RFC assessment was based on "assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments" – a process forbidden by SSR 02-1p.

*Id.* Accordingly, the Tenth Circuit remanded for proper consideration of the claimant's obesity in relation to her other impairments and her RFC. *Id.* at *4.

Although the ALJ here stated at Step Three that she "considered the effects of [Plaintiff's] obesity and included those effects within the determination of [Plaintiff's] residual functional capacity," *AR* at 24, she failed to follow up with any specific findings as to the impact, if any, of Plaintiff's obesity on her other impairments or on her RFC. For instance, while she acknowledged that certain impairments might be affected by obesity, she did not devote any analysis to how Plaintiff's obesity impacted impairments such as her sleep apnea or back conditions. Nor did she discuss any medical or nonmedical evidence related to Plaintiff's obesity. It seems that, instead, she relied upon her own assumptions about the severity or functional effects of Plaintiff's obesity combined with her other impairments.

In short, the ALJ failed to adequately consider and discuss Plaintiff's obesity in relation to her other impairments, in violation of SSR 02-1. As a result, the Court cannot conclude that the ALJ employed the correct legal standards or that her decision was supported by substantial evidence. Remand is, therefore, warranted.

### C. Whether the ALJ properly evaluated Plaintiff's migraines.

Finally, Plaintiff contends that the ALJ failed to explain how her RFC finding was affected by Plaintiff's migraines or how Plaintiff's migraines might interfere with her work activities. The Commissioner, on the other hand, insists that the ALJ provided an adequate discussion of the effects of Plaintiff's migraines on her RFC.

In contrast to her treatment of Plaintiff's obesity, the ALJ devoted considerable discussion to Plaintiff's migraines throughout her decision. While she acknowledged that Plaintiff had an eight-year history of migraines, she also referenced medical records indicating that neck injections provided her with 90% relief as well as records suggesting that her migraine medications were generally effective. *AR* at 26. She noted that there were no recent emergency room visits for treatment of migraines and explained that Plaintiff's activities of daily living did not correspond with severe daily migraines. *AR* at 28. Finally, she emphasized that a CT scan and MRI revealed no pertinent abnormalities, other than sinus disease. *AR* at 26. In short, the ALJ thoroughly considered the impact of Plaintiff's migraines and simply concluded that they were not as debilitating as Plaintiff alleged.

Then, by limiting Plaintiff to simple, routine, repetitive work which requires no more than two hours of maintaining concentration, persistence, and pace at a time, the ALJ implicitly accounted for Plaintiff's migraines. After all, Plaintiff explained in her Function Report that her migraines were exacerbated by stress and that they caused problems with her memory and concentration. *AR* at 201-02, 249. Ultimately, the Court finds that the ALJ adequately considered Plaintiff's migraines in determining her RFC. She gave legitimate reasons for her conclusion that Plaintiff's migraines were not disabling, and her determination is supported by substantial evidence. The Court will not reweigh the evidence as it pertains to Plaintiff's migraines; nor will it substitute its own discretion for that of the ALJ.

-15-

## IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiff's motion to remand but only for proper consideration of Plaintiff's obesity, including discussion of how or whether it influenced the RFC determination.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 16)* is **granted**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent of the Parties